IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| DONNA DALTON, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. |
| | : | 7:08-CV-130 (HL) |
| GEICO ANNUITY AND INSURANCE COMPANY, | : | |
| Defendant. | : | |

## ORDER

Before the Court is defendant's Motion for Summary Judgment (Doc. 20) and plaintiff Donna Dalton's ("Dalton") Motion to Amend Complaint (Doc. 19). For the following reasons, the motions are granted.

I.  **MOTION TO AMEND**

Dalton wishes to substitute the name of defendant to Government Employees Insurance Company. The defendant has no objection to the substitution.

Because Dalton wishes to change the name of the defendant Federal Rule 15(c) provides that the amendment may be granted when the "claim or defense arose out of the conduct, transaction, or occurrence set out-or attempted to be set out--in the original pleading" and the new defendant has received notice of the case within the period provided by Fed. R. Civ. P. 4(m). See Fed. R. Civ. P. 15(c).

The amended complaint against Government Employees Insurance Company alleges the same wrongful conduct as in the original complaint. Additionally, since

Government Employees Insurance Company is the same corporate entity as the current defendant, Dalton is simply correcting a mistake about the correct name of the defendant, and the proper defendant has received proper notice of this lawsuit through service.

Accordingly, Dalton's motion to amend the complaint to name Government Employees Insurance Company ("Geico") as the named defendant is granted.

## II. PROCEDURAL AND FACTUAL BACKGROUND[1]

Dalton was hired by Geico on August 25, 2003 to work in its Macon, Georgia office as an emergency road service dispatcher. (SOMF ¶¶1, 2).[2] Later Geico transferred Dalton to sales representative and billing positions. (SOMF ¶¶ 3, 4). After the billing department was dissolved Dalton was transferred to a service representative position. (SOMF ¶ 5). As a service representative, Dalton received incoming telephone calls from Geico policy holders. (SOMF ¶ 6). At all times, Dalton was an at-will employee.[3] (SOMF ¶ 7).

### A. Dalton's Medical Condition, Requests for Accommodation and Time Off From Work

In August 2005, Dalton was diagnosed with breast cancer. (SOMF ¶ 39). She

---

[1] The Court views the facts in the light most favorable to Dalton, the nonmoving party.

[2] "SOMF" refers to Geico's statement of material facts filed in support of its motion for summary judgment (Doc. 22). The cited paragraphs are those admitted by Dalton in her response to Geico's statement of material facts.

[3] Under Georgia law, an at-will employee "may be terminated for any or no reason. . . ." Reid v. City of Albany, 622 S.E.2d 875, 877 (Ga. Ct. App. 2005).

submitted a Family and Medical Leave Act[4] ("FMLA") request for leave to Geico asking for time off from August 9, 2005 to August 29, 2005 and for intermittent time off during the upcoming months. (SOMF ¶ 40). Her leave request was accompanied by a certification of her health care provider. The certification, signed by her surgeon, stated that Dalton required time off from work for cancer treatment. (SOMF ¶ 43). Geico approved Dalton's FMLA leave request for August 9th through August 25th as well as for intermittent leave for treatment. (SOMF ¶ 45).

Soon after she was diagnosed with cancer, Dalton met with a psychologist to discuss her mental health. (SOMF ¶ ¶ 55,56). Dalton indicated to the psychologist that she had support from friends and family and she was looking forward to returning to work. (SOMF ¶ ¶ 59, 60). The psychologist determined that Dalton was in a good psychological and emotional state to begin her cancer treatment. (SOMF ¶ 61).

Dalton underwent a lumpectomy in August 2005. (Dalton Dep. Ex. 100). Then she received chemotherapy treatment, which was completed in October 2005. (SOMF ¶ 73). She also received radiation therapy, which was completed in January 2006. (SOMF ¶ 91).

In October 2005 Dalton was diagnosed with lymphedema, a condition that caused her arm pain. (Dalton Dep. Ex.106). The lymphemea also caused her arm to swell. She was prescribed a compression sleeve to treat the lymphedema. (Id.)

In December 2005 Dalton began to work under a new supervisor. According

---

[4] The statute is codified at 29 U.S.C.§ 2601 *et seq.*

to Dalton her new supervisor would tell Dalton when she called in for scheduled FMLA leave "you have to come in here; if you don't come in here, you're going to lose your job today." (Dalton Dep. Vol. I at 66). The supervisor also sometimes miscalculated the number of FMLA hours Dalton was entitled to take, which caused money to be withheld from Dalton's paycheck. (Id.). Dalton sought out the assistance of the Human Resources department to correct the improper pay withholding. (Id. at 59). Her supervisor's actions caused Dalton to suffer emotional distress. (Id.).

Dalton continued to suffer from arm pain in April 2006. (SOMF ¶ 125). As a result, on April 27, 2006, Dalton submitted a FMLA leave request which was accompanied by a certification of her health care provider. The certification stated that Dalton would need time off from work for arm pain treatment, but she was able to perform her essential job functions while she was at work. (SOMF ¶ 129-130). Geico approved Dalton's FMLA leave requests for two dates in April as well as for intermittent leave three to four times per month for arm pain medical treatment. (SOMF ¶ 132). In May 2006 Dalton received a left stellate ganglion block ("a nerve block") to treat her arm pain. (SOMF ¶ 139).

In August 2006 and Setember 2006, Dalton requested that she be returned to her former position as an emergency road dispatcher. (SOMF ¶ 146). Although there were no physical differences between the emergency road dispatcher and customer service representative positions, Dalton believed that the emergency road dispatcher position was less stressful. (Dalton Dep. Vol. I at 72). Her supervisor

4

did not grant the requests, even though there was a vacancy in the emergency road dispatcher department. (SOMF ¶ ¶ 146, 147, Dalton Dep. Vol. I at 74).

At some point after she received surgery to treat her cancer in 2006 Dalton asked her supervisor whether she could work part-time. (Dalton Dep. Vol. I at 100). Her supervisor told her that she could not work part-time. (Id.).

Dalton was also prescribed a medication to treat depression, although the date the medication was prescribed is unclear. (Dalton Dep. Vol. I at 104). However, by September 2006 she did not have any depression problems, nor did she need sleep medication. (SOMF ¶ 154). Further, Dalton's left arm no longer exhibited swelling symptoms (SOMF ¶ 155). Nevertheless, in October 2006 the pain and burning sensation in her left arm returned. (SOMF ¶ 156). To treat the arm pain, Dalton was prescribed medication and received a second nerve block. (SOMF ¶ ¶ 156, 157).

In November 2006, she complained to her physician of suffering from fatigue and abnormal weight gain. (Dalton Dep. Vol. I at 251 and Ex. 113). She was prescribed medication to treat her weight gain. (Id.)

From January 20, 2007 through January 28, 2007 Dalton was absent from work due to her arm pain. (SOMF ¶¶ 193, 219). She reported to work on Monday January 29, 2007. (SOMF ¶ 210). She was prevented from working that day because she did not provide Geico a "fitness for duty certification" signed by a treating physician. (SOMF ¶ ¶ 215, 216). Although she did provide Geico a "fitness for duty certification" the physician who signed the certification was not listed on her

5

FMLA paperwork as one of her treating physicians. (SOMF ¶ 216). The next day her treating physician wrote and signed a letter making it clear that he had treated Dalton during the time that she was absent from work. (SOMF ¶ 220). He also wrote that her prescribed medication should end her arm pain, and no more work absences were anticipated. (SOMF ¶ 219). Upon receiving the physician's letter, Geico allowed Dalton to return to work. (SOMF ¶ 221). Dalton was paid for the day she was prevented from working and the day did not count against her available leave time. (Supp. Decl. Mary Saldivar ¶ 5).

On February 6, 2007, Dalton sent a request to her supervisor asking to transfer from working the 11:00 a.m. to 7:00 p.m. shift to working the 1:00 p.m. to 9:00 p.m. shift so that she could attend physical therapy sessions in the morning (SOMF ¶ ¶ 231, 234). Geico approved the shift change. (SOMF ¶ 236). Her shift change was to go into effect on March 3, 2007. (SOMF ¶ 237).

### B. Dalton's Performance and Termination

At Geico, concerns about an employee's performance were usually addressed first through a verbal counseling session. (SOMF ¶ 12). Further disciplinary steps could be taken including issuing a coaching plan, writing a record of conversation, implementing a performance improvement plan, issuing a warning, and terminating an employee. (Id.).

During her employment at Geico, Dalton did not meet Geico's performance

6

standards.[5] As a result, Geico implemented a performance improvement plan in September 2006. (SOMF ¶ 148). The goals of the plan were for Dalton to increase the amount of time she was available to talk to customers, to increase the number of referrals she made for preferred Geico plans, and to get her A-call percentages up.[6] (SOMF ¶ 148). The plan indicated that failure to meet the goals would result in Geico issuing her a warning for job performance. (SOMF ¶ 149).

On November 13, 2006, Dalton received a warning from her supervisor for failing to meet the goals in her performance improvement plan. (SOMF ¶ 167). The warning indicated that Dalton had another opportunity to meet her goals. (SOMF ¶ 168). It also stated that if she failed to meet her goals by the end of December 2006, then she would be subject to additional disciplinary consequences, including termination. (SOMF ¶ 169).

On February 2, 2007, Dalton's supervisor sent her a memo which stated that the warning was still in effect. (SOMF ¶ 225). Dalton had not met her performance goals despite the extension that was granted to her in November 2006. (SOMF ¶ 227). Nevertheless, Geico decided not to terminate Dalton at that time. It took into account that Dalton missed work during January and began to work under another

---

[5] Dalton's errors included leaving customers on hold for too long (SOMF ¶¶ 92, 106), low numbers of A-calls (SOMF ¶ 168), failing to refer customers to preferred policies (SOMF ¶ 105, 168), and not being available to take calls from customers (SOMF ¶ 137).

[6] Sometimes Geico monitored calls. To receive an "A-call" the associate had to follow the "map" or script relevant to the call and treat the customer with respect and courtesy. (SOMF ¶19).

supervisor. (SOMF ¶¶ 176, 228).

At the end of February Dalton still had not met her performance goals. (SOMF ¶ 254). As a result, her supervisor consulted with another manager. (SOMF ¶ 254). Dalton's supervisor and manager spoke with Geico's Human Resources Department and explained that Dalton's warning had been in place since November 2006, that the warning had been extended through February 2007, and that at the conclusion of February Dalton still had not met her performance goals. (SOMF ¶ 255).

On March 2, 2007, Dalton's manager told Dalton that her performance goals had not been met even though the warning had been in place for several months. Due to her poor performance, the manager informed Dalton that Geico decided to terminate her. (SOMF ¶ 258). Dalton asked whether she could be transferred back to the emergency dispatch position, but her manager informed her that there were "no takers." (Dalton Dep. Vol. I at 84).

C.   **Dalton's EEOC Charge and Complaint**

Dalton's Equal Employment Opportunity Commission ("EEOC") charge was received by the EEOC on August 7, 2007. (Dalton Dep. Ex. 133). On July 9, 2008, the EEOC mailed Dalton a right to sue notice. (Dalton Dep. Ex. 135).

On October 10, 2008, Dalton filed her complaint (Doc. 1) in this Court alleging violations of FMLA and the Americans with Disabilities Act ("ADA"). She claims that her termination from Geico and the harassment she received from her supervisors violated FMLA. She also claims that Geico violated FMLA by requiring her to bring a "fitness of duty" letter to work and delaying her return to work on January 29, 2007.

As for her ADA claims, she asserts that Geico violated the statute by denying her reasonable accommodations and terminating her employment because of her disability--breast cancer and its side effects.

Geico moved for summary judgment on December 10, 2009 seeking judgment as a matter of law on all of Dalton's claims. (Doc. 20).

## III. ADA ANALYSIS

### A. Timely Filing of an EEOC Charge

Plaintiffs suing under the ADA "must comply with the same procedural requirements to sue as exist under Title VII of the Civil Rights Act of 1964." Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1339 (11th Cir. 1999). Complying with the procedural requirements is a jurisdictional prerequisite to filing suit. Hendrix v. Snow, 170 Fed. App'x 68, 76 (11th Cir. Feb. 8, 2006) (citing Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999)).

The procedural requirements are: (1) bringing suit within 90 days after the EEOC has dismissed the charge of discrimination. Id.; 42 U.S.C. § 2000e-5(f)(1); and (2) filing a timely charge of discrimination with the EEOC. Maynard v. Pneumatic Prod. Corp., 256 F.3d 1259, 1262 (11th Cir. 2001). In a non-deferral state, such as Georgia, a charge of discrimination with the EEOC is timely if it is filed within 180 days after the alleged act of discrimination. Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003); 29 C.F.R § 1601.13(a)(1). The time period commences to run when the adverse employment decision is made and is communicated to the plaintiff. Del. State Coll. v. Ricks, 449 U.S. 250, 258, 101 S.Ct.

9

498, 66 L.Ed.2d 431 (1980).

In this case, Dalton signed her EEOC discrimination charge on July 25, 2007. The EEOC received the charge on August 7, 2007. Since Dalton must file her EEOC charge within 180 days of the last discriminatory act, the Court limits its ADA analysis to those allegedly discriminatory acts occurring after February 8, 2007 and before August 7, 2007.[7]

Dalton argues that the Court should include in its ADA analysis the alleged discriminatory act that occurred on December 1, 2006 because her August 7, 2007 charge lists December 1, 2006 as the date of the earliest discriminatory act. The Court disagrees. In order for the Court to consider the act occurring on December 1, 2006, Dalton must have filed her charge of discrimination no later than May 30, 2007, 180 days after December 1, 2006.[8] Dalton did not file her charge until August 7, 2007. Thus, her charge was untimely as to the December 1, 2006 act.

### B. Framework for Analyzing an ADA Claim

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to. . . discharge of employees . . . and other terms, conditions, and privileges of

---

[7] Geico argues that Dalton's intake questionnaire form dated March 29, 2007 does not constitute a charge of discrimination. Dalton does not contest Geico's position; therefore, the Court does not address whether the intake questionnaire form is a charge of discrimination.

[8] This is the case even if the December 1, 2006 act was related to other discriminatory acts included in her timely filed EEOC charge. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002).

employment" 42 U.S.C. § 12112(a). Plaintiffs bringing an ADA claim may show discrimination through circumstantial evidence. Dalton's claim is based entirely on circumstantial evidence because it is evidence that requires the fact-finder to make inferences to conclude Dalton was discriminated against by Geico. See Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (explaining that direct evidence of discrimination is evidence "if believed, proves [the] existence of [a] fact in issue without inference or presumption.").

Plaintiffs pursuing ADA claims based on circumstantial evidence are required to prove discrimination under the traditional Title VII burden-shifting framework. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). The burden-shifting analysis first requires the plaintiff to establish a prima facie case of discrimination.[9] Id. A prima facie case exists when the plaintiff shows: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. Id. In this case, summary judgment must be granted to Geico because Dalton has not shown there is a genuine issue of fact as to whether she is disabled.

## C. Whether Dalton is Disabled

The ADA defines a disability as a "(a) physical or mental impairment that

---

[9] If successful, then a presumption of discriminatory intent arises and the burden of production shifts to the employer to state a legitimate, non-discriminatory reason for its action. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). The burden then shifts back to the plaintiff to show that the defendant's proffered legitimate, non-discriminatory reason is a pretext for discrimination. Id.

substantially limits one or more major life activities of such individual; (b) having a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Dalton contends that she is disabled under the first definition. She asserts that she has a physical impairment that substantially limits the major life activities of performing manual tasks and working.

To satisfy the first definition of disability, three things must be shown by the plaintiff. Rossbach v. City of Miami, 371 F.3d 1354, 1357 (11th Cir. 2004). First, the plaintiff must establish that his condition constitutes an impairment. Id. Second, the plaintiff must show that the life activity that has been limited is a "major life activity." Id. Third, the plaintiff must show that the impairment "substantially" limits the identified major life activity. Id.

### 1. Physical or mental impairment

A physical or mental impairment as defined within the ADA means a disorder or condition that affects "one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory, cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin and endocrine." 29 C.F.R. § 1630.2(h)(1). An impairment may also constitute "any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2).

The record reveals that Dalton had multiple impairments as a result of suffering from breast cancer. Dalton received a lumptecompcy and lost her hair from chemotherapy treatment. A longer lasting impairment was arm pain. She also

suffered from fatigue and depression for an unknown duration.

For purposes of summary judgment, Dalton has shown that she suffers from impairments.

### 2. Life activity

In her response to Geico's motion for summary judgment, Dalton claims that her impairments affected the life activity of performing manual tasks. She also alleges that her job performance was affected by her impairments, which the Court construes to mean that Dalton believes her impairments affected the life activity of working.

Title 42 U.S.C. § 12102(2)(A) states that major life activities include performing manual tasks and working. The Court finds that for summary judgment, Dalton has shown that her impairments affected the life activities of working and performing manual tasks; however, as is explained in the next section of this order, summary judgment must be granted to Geico because Dalton has not shown that these life activities were substantially limited by her impairments.

### 3. Whether Dalton's ability to work and perform manual tasks were substantially limited by her impairments

A person is substantially limited in his ability to perform a major life activity if he is "[s]ignificantly restricted as to the condition, manner, or duration under which he can perform a major life activity" as compared to the average person. 29 C.F.R. § 1630.2(j)(ii).[10]

---

[10] Congressional amendments to the ADA went into effect on January 1, 2009. See ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553

Geico argues that Dalton has not presented evidence that on February 8, 2007 and afterward, her impairments created long-term restrictions on her ability to perform her job. It points out that there is no evidence in the record that a medical doctor opined that the side effects from her cancer restricted her ability to work. Dalton's arm pain was treated by a doctor who stated on January 30, 2007, that medication "should put an end to this particular surgical complication and no more absences for this reason are anticipated." (Dalton Dep. Ex. 116). The fitness for duty certification signed by the doctor on January 29, 2007 stated that Dalton could return to work with no work restrictions. (Dalton Dep. Ex. 84).

In her response brief, Dalton argues that "it is clear that [Dalton] experienced ongoing with pain [in] her arm, swelling and fatigue that were sustained past the initial treatment." She conclusorily asserts that her physical discomfort and swelling and pain in her arm affected her job performance and ability to perform manual tasks; however, she provides no facts to support these assertions.

The Court's independent review of the record shows no evidence that on February 8, 2007 and afterward her impairments substantially affected her ability to perform manual tasks and to work. As for her lingering arm pain and swelling, those problems had diminished to the point where on January 29, 2007, her treating physician believed that Dalton could work with no restrictions. Moreover, there is no

---

(2008). Pursuant to these amendments, Congress expects the EEOC to broaden its definition of "substantially limits." See 42 U.S.C. § 12102(4)(B) (stating that "[t]he term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008."). The EEOC has not yet redefined "substantially limits."

evidence demonstrating to what extent her ability to perform manual tasks was limited by her arm swelling and pain.

Regarding her depression and fatigue, there is no evidence demonstrating the extent of these limitations. She testified that she wished to return to the emergency dispatch position because it was less "stressful" but provided no further explanation as to why she could not perform her duties as a customer services representative because of her depression and fatigue. Her speculative testimony regarding the different stress levels of the position is insufficient to create a genuine issue of fact as to whether her depression and fatigue substantially limited her ability to work or to perform manual tasks.

Further, the direct effects from chemotherapy and radiation treatment ended at the completion of these treatments in December 2006. There is no evidence, aside from her arm pain, that her impairments from chemotherapy and radiation were long-term or permanent. "A temporary ability to work while recuperating from surgery is not such a permanent or long-term impairment and does not constitute evidence of a disability covered by the Act." Sutton v. Lader, 185 F.3d 1203, 1209 (11th Cir. 1999).

In sum, the Court finds that the same outcome required in Garrett v. Univ. of Alabama, 507 F.3d 1306 (11th Cir. 2007) is also required here. In Garrett, the court found that the plaintiff failed to meet her burden of showing she was disabled even though the plaintiff had been diagnosed with breast cancer, had received chemotherapy, and received surgery which limited the use of her right arm for three

weeks. Id. at 1314-15. While not precluding the possibility that the side effects of breast cancer could render a person disabled, there was lack of objective evidence of the extent of the plaintiff's limitations. Id. at 1315. The court granted summary judgment to the defendant on the plaintiff's Rehabilitation Act[11] claim in part because there was no objective evidence of the extent of the plaintiff's limitations.

Similarly to Garrett, there is a lack of objective evidence showing the extent of Dalton's limitations. Dalton has failed to meet her summary judgment burden on whether she is disabled. Summary judgment must therefore be granted to Geico on Dalton's ADA claim.

## IV. FMLA ANALYSIS

Count one of Dalton's complaint alleges that Geico violated FMLA by terminating her employment and harassing her for exercising her FMLA rights. She also alleges that Geico violated FMLA on January 29, 2007, by refusing to allow her to return work until she obtained a "fitness of duty" letter.

### A. Termination and Harassment Claims

Geico's brief in support of its motion for summary judgment argues that Dalton has not shown a causal connection between the use of FMLA time and her termination. Geico also argues in its brief that Dalton has failed to show how Geico's alleged harassment prevented her from exercising her FMLA rights.

Dalton's response brief did not address her termination and harassment

---

[11] Rehabilitation Act claims are analyzed in the same manner as ADA claims. 29 U.S.C. § 794(d).

claims. Geico asserts in its reply brief that Dalton's FMLA termination and harassment claims have been abandoned.

The Court agrees that these claims have been abandoned. <u>Burnette v. Northside Hosp.</u>, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004) ("Failure to respond to . . . [a] party's summary judgment arguments regarding a claim constitutes an abandonment of that claim . . . .").

Summary judgment must therefore be granted to Geico on Dalton's FMLA termination and harassment claims.

### B. FMLA Claim for Refusing to Allow Dalton to Return to Work on January 29, 2007

Dalton's argument in her responsive brief is that Geico violated FMLA on January 29, 2007 by refusing to allow her to return to work because she did not present an adequate "fitness for duty form." She further argues that Geico's refusal to allow her to work on January 29, 2007 violated FMLA because it delayed her return to work. Dalton directs the Court to 29 C.F.R. § 825.312(b), which provides that an employer "must provide an employee with a list of the essential functions of the employee's job . . ." in order to require the employee to submit a "fitness-for-duty certification" prior to returning to work. The regulation states that an "employer may not delay the employee's return to work while contact with the health care provider is being made." 29 C.F.R. § 825.312(b). Dalton argues that Geico violated 29 C.F.R. § 825.312(b), and therefore FMLA, because Geico failed to provide Dalton a list of the essential functions of her position and delayed her return to work.

17

Geico argues in its reply brief that 29 C.F.R. § 825.312(b) was not in effect until January 16, 2009. The previous regulation did not contain language requiring the employer to provide the employee with a list of essential functions. It asserts that it cannot be held liable under FMLA for failing to provide Dalton with a list of her job's essential functions. Geico further argues that Dalton's return to work was delayed less than one full day and that Dalton was paid for the delayed time and the delay was not counted against her available leave time. Assuming that the delay was a technical violation of the FMLA, Geico believes the FMLA claim is not actionable because Dalton has not shown how she suffered any adverse employment action.

It is prohibited under FMLA for an "employer to interfere with, restrain, or deny the exercise of or the attempt to excercise, any [FMLA right]." 29 U.S.C. § 2615(a)(1). To state a FMLA interference claim, a plaintiff must demonstrate that he was entitled to a benefit under the FMLA and the employer denied him the benefit. Strickland v. Water Works & Sewer Bd. of the City of Birmingham, 239 F.3d 1199, 1206-07 (11th Cir. 2006).

As to Geico's first argument, regulations, like statutes, are ordinarily presumed not to have retroactive effect. Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S. Ct. 468, 471-72, 102 L.Ed.2d 493 (1988). The FMLA regulations promulgated in 2009 do not provide any indication that they are to be applied retroactively. The Court therefore refers to the regulations that were in force on January 29, 2007. Since the prior version of 29 C.F.R. § 825.312(b) did not contain

a requirement that an employer provide an employee a list of the essential functions of the job, Geico's failure to provide Dalton with such a list did not violate FMLA.

As to Geico's second argument, Geico is correct that "[t]echnical infractions under the FMLA" are not actionable "in the absence of damages." Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1284 (11th Cir. 1999). FMLA does not allow recovery for mental distress or the loss of job security. Id. (citation omitted).

For summary judgment purposes, it is undisputed that Dalton was delayed in returning to work by a day, but that she was paid for the time she was delayed, and the delay did not count against her leave time. Because Dalton has failed to show she incurred damages as a result of her delay in returning to work, Dalton has failed to meet her summary judgment burden on her FMLA claim.

## V.　CONCLUSION

For the explained reasons, Geico's motion for summary judgment (Doc. 20) is granted. Judgment is entered in favor of Geico.

**SO ORDERED**, this the 28th day of June, 2010.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

lmc